UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL NOLAN,

        Plaintiff,                    CIVIL ACTION NO. 12-12634

vs.

                                        DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF                MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's motion for summary judgment (docket no. 8) be denied, Defendant's motion for summary judgment (docket no. 10) be granted, and Plaintiff's complaint be dismissed.

**II.    PROCEDURAL HISTORY:**

Plaintiff protectively filed an application for supplemental security income in December 2009, alleging disability beginning September 1, 2008 as a result of muscular dystrophy, depression, and anxiety. (TR 113-19, 133). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On March 7, 2011 Plaintiff appeared with counsel in Mt. Pleasant, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Mark Greenberg. (TR 32-53). Vocational Expert (VE) Richard Riedl also appeared and testified at the hearing. In a March 24, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because there were jobs that existed in the national economy that Plaintiff could perform. (TR 19-27). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely

complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

### III.  PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A.  Plaintiff's Testimony

Plaintiff was eighteen years old on the date his benefits application was filed. (TR 25). He received a high school diploma and at the time of the hearing he was taking political science classes at a state university. (TR 36). Plaintiff testified that he drives himself to campus to attend college classes and he reported that he has never held a job. He lives at home with his mother.

Plaintiff testified that he suffers from fatigue, muscle weakness primarily in his face, arms, and legs, and moderately severe depression. He claimed that he has been tested as having borderline sleep apnea. (TR 38, 41-42). He testified that he was considering getting a cane because he falls frequently. (TR 38, 44). He has a scooter for long distances although he has not used it. (TR 43). Plaintiff stated that he has had episodes of depression that have lasted a year but his condition has improved with medication, which includes Lexapro, Wellbutrin, and Cocuten. (TR 42).

Plaintiff testified that he can lift up to a gallon of milk. (TR 38). He reported that he can sit for up to two hours at a time before the muscles in his back and shoulders begin to hurt. He testified that he is most comfortable when he lies down. (TR 39-40). Plaintiff reported that he takes a one to three hour nap each day and claims that he has a very difficult time when he does not nap. (TR 37). When he awakens from his nap he generally stays at home, works on homework, and reads. (TR 37). He stated that he is able to shop at small stores, he visits with friends at their homes, and he spends approximately two hours each day on the computer. (TR 38-39).

**B.     Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record and will summarize limited portions of the record below. The record shows that Plaintiff has a history of muscular dystrophy, lordosis, scoliosis, depression, anxiety, sleep apnea, and he has had episodes of tachycardia and difficulty breathing. (TR 196-98, 255-59, 286-88). In January 2009 he was treated by Dr. Mohammad Khan at St. Mary's Saginaw Valley Pediatrics for left sided back pain and pain with breathing. (TR 250). In December 2009 Plaintiff was evaluated by Dr. Mendelow of Michigan Pediatric Orthopaedic & Scoliosis Associates for lordosis, scoliosis, and low back pain, where it was determined that Plaintiff's low back pain may be related to his hyperlordotic gait. (TR 286-88). Dr. Mendelow reviewed x-rays and noted that there was no evidence of scoliosis or spondylolisthesis. He did note that there was possible right sided high leg length difference based on hip heights. The doctor recommended diagnostic testing. The record shows that Plaintiff took Motrin as needed for pain relief. (TR 301).

Plaintiff participated in physical therapy approximately two times a week for eight weeks between June 30, 2009 and August 27, 2009 with good results. (TR 208-41). A June 2009 physical therapy note states that Plaintiff had impaired stair negotiation, community mobility, and grooming associated with pain, in addition to diminished strength and range of motion related to muscular dystrophy. (TR 212). An initial self assessment shows that Plaintiff had no difficulty sitting for four hours and pushing or pulling heavy doors; minimal difficulty descending a flight of stairs, balancing on one leg, moving a table, or carrying two bags of groceries; some level of difficulty standing for up to thirty minutes, climbing a flight of steps, and performing work or home activities; a fair level of difficulty walking a few blocks or squatting and kneeling; and a significant degree of difficulty

reaching high shelves. (TR 224). Plaintiff reported that he was unable to walk several miles or run two blocks. (TR 224). By August 27, 2009 Plaintiff's self assessment showed significant functional improvements and he reported that he had exceeded his physical therapy expectations. (TR 229). Reports show that Plaintiff's range of motion of the shoulders improved with physical therapy, as did his knee extension and strength of the lower extremities. (TR 215). In addition, within several sessions Plaintiff no longer had pain at rest or with activities, he could reach up to wash and comb his hair with less difficulty, and he was better able to ascend stairs. (TR 214). In September 2009 Plaintiff reported a positive impact after his Lexapro medication was increased. Plaintiff reported that he was doing well overall, he had no side effects from medication, he had improved energy, he took fewer afternoon naps, and he had more normal sleep patterns. (TR 275-78).

In February 2010 Dr. Andrew Sears completed a medical evaluation for the State Disability Determination Service. (TR 289-95). The doctor observed that Plaintiff walked with a pronounced limp and unsteady gait, he had obvious weakness in the left leg, difficulty bending his left knee, and obvious difficulty elevating his arms above his head. He also had weakness in his right elbow and shoulders, minimal weakness in his hands, and diminished reflexes. The doctor observed that Plaintiff would benefit from the use of a cane since he falls one to two times per week due to weakness in the knees and ankle dorsiflexion.

Dr. Jerry Evans completed a physical residual functional capacity assessment in April 2010 and found that Plaintiff could frequently lift slightly less than ten pounds, stand and/or walk for two hours, and sit about six hours in an eight hour day. (TR 324-25). The doctor found that Plaintiff required a cane if walking more than one hundred yards, a scooter for distances over one to two blocks, and a hand rail and cane for climbing stairs. He found that Plaintiff had difficulty arising

from a seated position.

M. Eileen McCormick, D.O., a specialist in muscular dystrophy, completed an annual assessment of Plaintiff on August 17, 2010. (TR 314-15). Her previous assessment was performed in June 2009. (TR 316-17). The evaluator found that Plaintiff was compliant with the pulley system regarding maintenance of upper body maximal functional capability. She also found that he was cleared by his orthopedic surgeon regarding scoliosis or any need for intervention. The evaluator encouraged Plaintiff to use a scooter for long distance while at college and found that Plaintiff was functional for his school needs.

In March 2010 psychiatrist G. Renee Thomas-Clark assessed Plaintiff with major depression upgrade to recurrent, moderate to severe status, rule out bipolar disorder. (TR 300-01). She noted that Plaintiff was not doing as well on Lexapro as he had previously been doing. In January 2010 the evaluator found that Plaintiff was independent in his personal care except that he needed guidance in the areas of taking medication, special food preparation, laundry or housekeeping. The evaluator also found that Plaintiff was independent in the areas of community safety, leisure activities, and transportation. (TR 307).

Judy Strait, Psy.D, L.P. completed a psychiatric review technique for the State Disability Determination Service. (TR 318-23). The evaluator assessed Plaintiff under listing 12.04 Affective Disorders and found that he did not meet the B criteria of the listing since he had only mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace, and no episodes of decompensation. The evaluator found no evidence of the C criteria and opined that Plaintiff's activities of daily living were devoid of psychological-related impairments.

5

A mental medical source statement dated April 2011 shows that Plaintiff was mildly limited in his ability to withstand the stress and pressures associated with an eight hour workday and day-to-day work activity, but he otherwise was not significantly limited. (TR 329).

## IV.     VOCATIONAL EXPERT TESTIMONY

The ALJ asked the VE to assume a younger individual of Plaintiff's age who has a high school education and no past relevant work experience, and who has the ability to perform sedentary work with the following limitations: (1) frequent lifting of slightly less than ten pounds, (2) must be able to use a cane for walking distances over 100 yards or a scooter for distances over one to two blocks, (3) requires a hand rail and a cane for climbing stairs, (4) has some postural limitations such as difficulty arising from a seated position, (5) cannot climb ladders, ropes, or scaffolds, kneel or crawl, and has occasional limitations with other postural activities, and (6) limited to occasional overhead reaching. The VE testified that the hypothetical individual can perform sedentary unskilled work as a simple bench assembler, small parts assembler, general office helper, and surveillance or security monitor, comprising approximately 7,300 jobs in the lower peninsula of Michigan. (TR 47-48). The VE further testified that the listed jobs can be performed sitting down with no ambulation, and stated that these same jobs would be available if the individual required a cane for ambulation or occasional arm or leg controls. (TR 48).

Next, the ALJ asked the VE if jobs were available for a hypothetical individual with the above listed six limitations with the addition of a sit-stand option. The VE testified that the individual could perform the same jobs but with a reduction in the overall number of available positions to approximately 5,700 jobs in the lower peninsula of Michigan. She testified that the individual could perform shift work on a shift that begins after two o'clock in the afternoon to

accommodate a need for a mid afternoon nap and still be capable of working as a surveillance monitor, bench assembler, and a sedentary unskilled packager, with 4,100 jobs in the lower peninsula of Michigan. (TR 49-51). If the individual was not able to complete an eight hour workday without requiring a nap he would not be capable of full time employment.

The VE testified that two or more absences per month on a regular month to month basis would result in termination of the individual's employment. She also testified that work would be precluded if the individual needed to lie down each day at unpredictable times or for an unpredictable amount of time outside the typical breaks and lunch period. (TR 52).

## V. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that while Plaintiff had not engaged in substantial gainful activity since the application date of December 1, 2009, and suffered from the severe impairments of facioscapulohumeral muscular dystrophy, he did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (TR 19-22). The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform sedentary work with the following limitations: (1) frequent lifting of slightly less than ten pounds, (2) stand and/or walk for a total of two hours in an eight hour workday, (3) sit about six hours in an eight hour workday with a sit/stand option, (4) require a cane for all ambulation and a scooter for distances over one to two blocks, (5) require a hand rail and cane for climbing stairs, (8) he has difficulty arising from a seated position and he can occasionally climb ramps/stairs, balance, stoop, and crouch, (9) he can never climb ladders/ropes/scaffolds, kneel, or crawl, and (10) he can occasionally reach overhead and use arm/leg controls. (TR 23-25). The ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act since the application date of December 1, 2009

because he remained capable of performing a significant number of jobs existing in the economy. (TR 25-27).

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and

>    3.  the impairment met or was medically equal to a "listed impairment;" or
>    4.  he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that the ALJ erred in assessing his credibility and formulated inaccurate hypothetical questions that failed to accurately account for his impairments. He contends that the hypothetical questions did not take into account the pain he suffers as a result of his progressing disease or the affect his pain has on his ability to concentrate. He argues that the hypothetical questions should have considered his testimony that he has back, hip, and leg pain, weakness in his knees and ankles, and that his preferred position is lying down.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial

review. Despite deference due such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p, 1996 WL 374186, at *2.

The Regulations provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve pain, and (7) functional limitations and restrictions caused by the pain. 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors). While the ALJ should consider the factors listed above, "he is not required to significantly analyze any of them." *Ahee v. Comm'r*, No. 07-12071, 2008 WL 4377652, at *3 (E.D. Mich. Sept. 22, 2008) (citations omitted).

As for the hypothetical questions, the ALJ may rely on evidence that is in the form of a VE's testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Varley,* 820 F.2d at 779 (citations omitted). The ALJ may pose such hypothetical questions to the VE which in his discretion include only those limitations the ALJ finds credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d

1230, 1235 (6th Cir. 1993).

Here, the ALJ found that Plaintiff was generally credible based on evidence that showed that his medically determinable impairments could reasonably be expected to cause his alleged symptoms, including pain symptoms. However, the ALJ also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC and alleged total disability. (TR 23-24).

The ALJ first considered the objective evidence of record. He reviewed Dr. Mendelow's evaluation showing that Plaintiff's low back pain may be mechanically related to his hyperlordotic gait. (TR 24). He also discussed Dr. Sears' examination which found that Plaintiff walked with a pronounced limp and had weakness in his left leg with difficulty elevating his arms and bending his knee. (TR 24). In addition, the ALJ considered Dr. McCormick's recommendation that Plaintiff utilize a scooter for long distances. The ALJ then noted that despite the medical recommendations, Plaintiff had not felt it necessary to obtain and use a scooter or cane to assist with ambulation. (TR 24). He considered the fact that no physician had imposed a work limitation upon Plaintiff or indicated that Plaintiff's abilities were more limited than what was permitted in the RFC.

Next, the ALJ considered the other evidence of record, including evidence of Plaintiff's activities of daily living, finding that Plaintiff has only mild functional limitations in this area. (TR 22, 24). The ALJ cited to evidence showing that Plaintiff can shop, maintain his own personal care, prepare simple meals, drive, and take a full course load in college while maintaining A and B grades. (TR 22-24). The ALJ discussed evidence showing that Plaintiff spends his time watching television, reading, and using a computer. (TR 24). He discussed Plaintiff's pain complaints and reviewed Plaintiff's testimony that he has pain in his knees, hips, back and shoulder. (TR 23). He noted that

Plaintiff has low back pain possibly associated with a hyperlordotic gait. (TR 24). He also reviewed evidence showing that Plaintiff has difficulty elevating his arms above his head and bending his left knee. In addition, the ALJ discussed statements made by Plaintiff's mother in a Third Party Adult Function Report which addressed Plaintiff's functional limitations. (TR 25). Furthermore, the ALJ documented that he carefully considered the entire record before making his determination. The record shows that Plaintiff only took Motrin as needed for pain relief and demonstrates that Plaintiff did not report medication side effects. (TR 21, 275-78, 301). With respect to Plaintiff's claims that his pain affects his ability to concentrate, the ALJ found based on substantial evidence in the record that Plaintiff has only mild limitations in concentration, persistence, or pace, which was supported by the fact that Plaintiff takes fifteen college credits, earns very good grades, reads, and works on a computer each day.

The ALJ did not simply rely on objective medical evidence or offer a conclusory statement dismissing Plaintiff's limiting statements of pain. Instead, the ALJ considered the entire record and found that Plaintiff's statements of total disability were not supported by substantial evidence. Having reviewed the record the undersigned finds that the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and is entitled to deference. Likewise, the ALJ posed accurate hypotheticals to the VE that incorporated Plaintiff's credible limitations. The undersigned recommends that the ALJ's opinion not be disturbed.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a

waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 24, 2013         s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 24, 2013         s/ Lisa C. Bartlett
                             Case Manager

13